# STATE OF MICHIGAN

# COURT OF APPEALS

In re BOYER, Minors.

UNPUBLISHED
April 19, 2018

No. 338157
Van Buren Circuit Court
Family Division
LC No. 16-018456-NA

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Respondent-mother appeals by right the order terminating her parental rights to her minor children, PB and RB, pursuant to MCL 712A.19b(3)(g). We affirm.

PB was born with positive results for amphetamines in her system. When PB was about eighteen months old, mother was arrested for retail fraud and violating her probation conditions while PB was in mother's car. Mother initially told an investigator for the Department of Health and Human Services (DHHS) that she did not remember the incident because she "blacked out" from prescription medication abuse, but she later recanted that claim. PB was removed from mother's care and placed with a licensed foster-care provider.[1] Mother continued to abuse prescription medication for which she did not have a prescription. She later gave birth to RB, who tested positive for morphine and benzodiazepine (Xanax) at his birth. RB was removed at birth and placed in the same foster home as PB. Mother was again jailed for prescription medication abuse and violating her probation conditions. Upon her release, mother lived in a women's shelter, and she was ordered not to have contact with the children's alleged biological father.[2] Mother was eventually kicked out of the shelter for violating the shelter's rules. She also violated her probation conditions and the trial court's order by having contact with the children's alleged biological father. As a result, mother was sentenced to 270 days in jail, where she remained for the rest of the proceedings.

Mother first argues that the trial court clearly erred in finding that MCL 712A.19b(3)(g) had been proven by clear and convincing evidence. We disagree.

---

[1] The foster-care provider was the brother of the children's alleged biological father.

[2] Mother was married to a man, who was deemed the children's legal father because of the marriage. However, a different man was the children's biological father.

-1-

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been met by clear and convincing evidence. MCL 712A.19b(3); *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review the trial court's determination for clear error. *Id*. "A finding is 'clearly erroneous' if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

The trial court terminated mother's parental rights to her children under MCL 712A.19b(3)(g), which states:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

"A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

The evidence presented at the termination hearing indicated that mother failed to provide proper care and custody of the children. Mother and both children tested positive for drugs at the time of the children's births. Mother committed a crime while PB was in her care, and she was incarcerated as a result. Throughout the case, mother continued to test positive for prescription medication for which she did not have a prescription, even admitting that she had a substance abuse problem. She was incarcerated multiple times throughout the case for prescription medication abuse and violating her probation conditions. Mother also admitted that she did not have any job or housing prospects upon her release. Additionally, the DHHS caseworker opined that mother made minimal to no progress with her case service plan, despite the fact that since the beginning of the case, she continually promised to get clean and to come in compliance with her case service plan. The termination hearing was held a year after the case was opened, and the caseworker testified that it would be another six months to one year before mother would be able to obtain a job and suitable housing, considering she had no plan once she was released from jail. In the end, the trial court did not find mother's testimony that she was ready to get clean credible, and this Court will not disturb such credibility determinations. We conclude that there was not a reasonable expectation that mother would be able to provide proper care and custody within a reasonable time considering the children's ages. Accordingly, we are not "left with a definite and firm conviction that a mistake has been made" in the trial court's finding that MCL 712A.19b(3)(g) was proven by clear and convincing evidence. *In re HRC*, 286 Mich App at 459.

Mother next argues that the trial court clearly erred in finding that termination of her parental rights was in the best interests of the children. We disagree.

The trial court must find by a preponderance of the evidence that termination was in the children's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's findings of fact are reviewed for clear error. *In re HRC*, 286 Mich App at 459. "A finding is 'clearly erroneous' if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id*.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In determining the children's best interests, the trial court may consider the children's bond to the parent; the parent's parenting ability; the children's need for permanency, stability, and finality; and the suitability of alternative homes. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. The trial court may also consider a parent's substance abuse problems, *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001), in addition to the testimony and opinion of experts, *In re Conley*, 216 Mich App 41, 44-45; 549 NW2d 353 (1996). "[A] child's placement with relatives weighs against termination." *In re Olive/Metts*, 297 Mich App at 43 (quotation marks and citation omitted).

In this case, the trial court considered the best interests of PB and RB separately. It considered the children's bond to mother; the children's need for permanency, stability, and finality; mother's visitation history; the advantages of the foster home over mother's home; the children's well-being while in foster care; the possibility of adoption; and mother's compliance with her case service plan.

The trial court also explicitly considered relative placement. The children were placed with the alleged biological father's brother, who was a licensed foster-care provider. The trial court found that because mother's husband was the legal father, neither the alleged biological father or his brother was a "relative" for purposes of the statute. Therefore, there was no "relative placement" in this case. Mother argues on appeal that the trial court's finding that there was no relative placement was error and that the children's placement with a relative weighs against termination. The trial court did not err in its determination that the children's alleged biological father was not a relative for purposes of the statute, but irrespective of that finding, the children's placement with the alleged relative weighed against termination.

The statute defines relative as being related by blood, marriage, *or* adoption. MCL 712A.13a(j) (emphasis added). Additionally, the statute specifically includes an uncle as a relative. MCL 712A.13a(j). That is, the brother of the alleged biological father *could* be a relative. The trial court, however, concluded that mother's husband—the legal father to the

children—was the only paternal relationship to the children. There were no actions taken to establish the paternity to the children, and although mother testified to the identity of the alleged biological father, there is no record evidence to support the identity of the biological father.[3] Therefore, we cannot conclude that the trial court erred in finding that the alleged biological father's brother was not a relative for purposes of placement. Regardless, the trial court considered placement with the brother of the alleged biological father, and it concluded that even though placement with a relative typically "takes away from the urgency" of termination, in this case, the children's ages and "the special needs and evaluation of this situation" weighed in favor of termination.

The trial court went to great lengths to consider all of the relevant best-interest factors, including placement with a relative. Accordingly, we are not "left with a definite and firm conviction that a mistake has been made" in the trial court's finding that termination of mother's parental rights was in the children's best interests. *In re HRC*, 286 Mich App at 459.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Thomas C. Cameron

---

[3] MCR 3.903(A)(7) defines a "father" as a "man" (1) who is "married to the mother at any time from a minor's conception to the minor's birth"; (2) who "legally adopts the minor"; (3) who is "judicially determined to be the father of the minor" "by order of filiation or by judgment of paternity"; (4) who is "judicially determined to have parental rights,"; or (5) "whose paternity is established by the completion and filing of an acknowledgement of parentage." As to the alleged biological father, none of these definitions apply. The alleged biological father is not listed on the birth certificate, an acknowledgement of parentage was not completed, the trial court did not determine parentage as it related to the alleged biological father, and the record shows that mother was married to the legal father at the time of the children's births. At most, the alleged biological father was ordered the putative father of the children, but no further actions were taken to establish paternity. Under MCL 712A.13a(j), only the parents of a putative father may be considered as a relative placement. Here, the putative father's brother was caring for the children as a licensed foster care worker—not as a relative.

-4-